IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

JOHN PALFREYMAN,

Defendant.

No. 4:22-CR-00074

(Chief Judge Brann)

## MEMORANDUM OPINION

### MAY 3, 2024

## I.   BACKGROUND

In 2022, John Palfreyman was indicted for possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] Palfreyman thereafter pled guilty, pursuant to a written plea agreement, to being a felon in possession of a firearm.[2]

Those charges arose from an incident in December 2021, when police were dispatched to a home "for a reported domestic disturbance in progress and possible protection from abuse violation between John Palfreyman and Summer Benjamin."[3] Palfreyman was taken into custody for violating a protection from abuse order; during his arrest, Palfreyman requested that police turn off his vehicle

---

[1]   Doc. 1.
[2]   Docs. 36, 40.
[3]   Doc. 64 at 6.

and close the doors to his truck.[4] Upon approaching the truck, "police observed two rifles in plain view on the rear seat."[5] Palfreyman was prohibited from possessing firearms as a result of both the protective order placed against him, and a prior felony conviction for possession with the intent to deliver a controlled substance, in violation of 35 Pa. Stat. and Cons. Stat. § 780-113(a)(30).[6]

Police thereafter secured two Remington Model 700 rifles and towed Palfreyman's truck to a Pennsylvania State Police barracks.[7] Police obtained a search warrant, searched that vehicle, and recovered "a plastic bag containing a large amount of suspected methamphetamine, a plastic storage container with a small amount of methamphetamine, a plastic pill bottle without a label that contained 157 Hydrocodone pills, a metal spoon with residue, six hypodermic needles, and four smart cellular telephones."[8]

After the Court accepted Palfreyman's guilty plea, a Presentence Report ("PSR") was prepared.[9] The PSR calculated a base offense level of 20 because Palfreyman's conviction in this matter came after he had sustained a felony controlled substance conviction.[10] The PSR did not provide a reduction for acceptance of responsibility, as Palfreyman had, on several occasions, violated the

---

[4]   *Id.*
[5]   *Id.*
[6]   *Id.* at 6, 10.
[7]   *Id.* at 6.
[8]   *Id.* at 6-7.
[9]   Docs. 40, 64.
[10]  Doc. 64 at 7; *United States Sentencing Guidelines Manual* § 2K2.1(a)(4)(A) (2021).

terms of his pretrial release and committed crimes, including by using methamphetamine on three occasions, violating curfew, and having contact with Summer Benjamin despite directives that he not contact her.[11]

The PSR detailed Palfreyman's lengthy criminal history.[12] Palfreyman had sustained fifteen prior convictions, including two convictions for possession of a controlled substance, three for harassment, two for intent to possess a controlled substance, along with convictions for possession with the intent to manufacture and deliver a controlled substance, simple assault, fleeing and attempting to elude police, and numerous other miscellaneous offenses.[13] This criminal history resulted in thirteen criminal history points and a criminal history category VI.[14] With a criminal history category VI and an offense level of 20, the PSR calculated an advisory Sentencing Guidelines range of 70 to 87 months' imprisonment.[15]

At sentencing, Palfreyman's attorney confirmed that he had reviewed the PSR and maintained an objection to the offense level of 20.[16] Counsel argued that Palfreyman's prior conviction did not qualify as a predicate controlled substance offense sufficient to qualify for an increased offense level; counsel understood that the argument was foreclosed by binding precedent from the United States Court of

---

[11]   Doc. 64 at 7-8.
[12]   *Id.* at 8-13.
[13]   *Id.*
[14]   *Id.* at 13.
[15]   *Id.* at 19.
[16]   Doc. 95 at 4-6.

Appeals for the Third Circuit, but maintained the objection to preserve the issue for appeal.[17] There were no other objections to the PSR.

This Court overruled the objection, but determined that Palfreyman only had an offense level of 18 and a criminal history category VI, resulting in an advisory Sentencing Guidelines range of 57 to 71 months' imprisonment.[18] The Court ultimately imposed a sentence at the bottom of that range, finding that a sentence of 57 months' imprisonment was warranted based primarily on Palfreyman's lengthy criminal history and the seriousness of the offense.[19]

Palfreyman did not appeal from that judgment. Instead, in August 2023 Palfreyman filed a 28 U.S.C. § 2255 motion, which he later withdrew.[20] Then, in September 2023, Palfreyman filed this § 2255 motion.[21]

In his motion, Palfreyman raises several issues. First, he argues that the Supreme Court of the United States' recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*[22] means that 18 U.S.C. § 922(g)(1) is unconstitutional and his conviction must be vacated.[23] Second, Palfreyman asserts that there were errors in the PSR as: (1) he adequately demonstrated acceptance of responsibility and the PSR wrongly denied credit for such acceptance; (2) the

---

[17]   *Id.*
[18]   *Id.* at 6-8.
[19]   *Id.* at 20-24.
[20]   Docs. 83, 85.
[21]   Doc. 87.
[22]   597 U.S. 1 (2022).
[23]   Doc. 87 at 1, 3; Doc. 87-2 at 10-11.

revised final PSR was not delivered to him in a timely manner; (3) the PSR improperly calculated his criminal history points; and (4) counsel was ineffective for failing to raise these issues.[24] Finally, Palfreyman argues that the Bureau of Prisons ("BOP") has improperly failed to credit him for time spent in pretrial detention, and that counsel was ineffective for failing to argue this issue at sentencing.[25]

The Government responds that Palfreyman's § 2255 motion should be denied.[26] First, the Government notes that many of Palfreyman's claims are procedurally defaulted and cannot be raised here since he could have, but did not, raise these claims on direct appeal.[27] The Government further argues that, in any event, Palfreyman's conviction does not violate the Constitution, as § 922(g)(1) is both facially constitutional and constitutional as applied to individuals like Palfreyman who were previously convicted of felony drug trafficking offenses.[28]

Additionally, the Government contends that the Court properly denied credit for acceptance of responsibility since it is well-established that continuing criminal conduct is inconsistent with acceptance of responsibility, and counsel was not ineffective for failing to raise a meritless argument to the contrary.[29] As to

---

[24] Doc. 87 at 1-2.
[25] *Id.* at 2.
[26] Doc. 101.
[27] *Id.* at 11 n.1.
[28] *Id.* at 11-22.
[29] *Id.* at 22-23.

Palfreyman's complaints regarding sentencing credits, the Government asserts that such matters are within the BOP's discretion and, regardless, such a claim must be raised in a 28 U.S.C. § 2241 motion and Palfreyman has not exhausted his administrative remedies.[30] Finally, the Government argues that the revision of the PSR did not prejudice Palfreyman, and therefore this issue is not cognizable in a § 2255 motion.[31]

Palfreyman has filed a reply brief, rendering this matter ripe for disposition.[32] For the reasons set forth below, the Court will deny Palfreyman's motion.

## II.    DISCUSSION

As discussed above, Palfreyman raises four broad claims in his § 2255 motion: his conviction is unconstitutional under the Second Amendment to the United States Constitution, there were errors regarding his PSR, the BOP has improperly calculated his sentence, and his attorney was ineffective for failing to raise several of these issues. The Court addresses these claims in turn.

### A.    Procedural Default

As an initial matter, many of Palfreyman's claims are procedurally defaulted and may not be considered here. The Supreme Court of the United States has long held that there is a "general rule that claims not raised on direct appeal may not be

---

[30]  *Id.* at 24-26.
[31]  *Id.* at 26-27.
[32]  Doc. 108.

raised on collateral review unless the [movant] shows cause and prejudice"[33] or is able to demonstrate "that he is actually innocent."[34] To show cause for procedural default, "a defendant must show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim."[35] "Examples of external impediments which have been found to constitute cause in the procedural default context include interference by officials, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel."[36]

Here, Palfreyman's allegations of errors in the PSR and assertion that § 922(g)(1) is unconstitutional could have been raised on direct appeal but were not. Palfreyman therefore committed procedural default, and this Court may consider those claims only if Palfreyman is able to establish cause and prejudice, or actual innocence.[37] The Court concludes that he cannot. First, as to actual innocence, Palfreyman presents no new evidence that was not previously available;

---

[33] *Massaro v. United States*, 538 U.S. 500, 504 (2003). *See also United States v. Travillion*, 759 F.3d 281, 288 n.11 (3d Cir. 2014) (noting that "issues which should have been raised on direct appeal may not be raised with a § 2255 motion").

[34] *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks omitted).

[35] *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (quoting *McCleskey v. Zant,* 499 U.S. 467, 493 (1991)).

[36] *Id.* (internal quotation marks omitted).

[37] *Massaro*, 538 U.S. at 504.

this precludes the possibility that, on the current record, the Court may find that Palfreyman is actually innocent of his crime of conviction.[38]

As to whether cause exists to excuse Palfreyman's procedural default, the only possible cause would be ineffective assistance of counsel.[39] However, there is no evidence that counsel was ineffective for failing to raise these issues, nor is there evidence that Palfreyman was prejudiced by that failure—particularly since, as discussed below, these issues are without merit. Accordingly, Palfreyman's procedural default may not be excused. Moreover, as discussed below, even if these claims were not procedurally defaulted, they would fail on their merits.

### B.    Constitutionality of Palfreyman's Conviction

The Court first addresses Palfreyman's claim that his conviction under 18 U.S.C. § 922(g)(1) is unconstitutional in light of *Bruen*.[40] First, it is clear that § 922(g)(1) is not facially unconstitutional. This Court has previously examined such an argument and noted that "the Supreme Court has twice explicitly reaffirmed that nothing in the opinions it has issued 'should be taken to cast doubt

---

[38]   *See Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021) ("To satisfy the demanding actual innocence exception, a [movant] must (1) present new, reliable evidence of his innocence; and (2) show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him (*i.e.*, a reasonable juror would have reasonable doubt about his guilt) in light of the new evidence").

[39]   Notably, the legal basis for Palfreyman's constitutional claim was available at the time he was sentenced in May 2023, given that *Bruen* issued in June 2022.

[40]   Doc. 87 at 1, 3; Doc. 87-2 at 10-11.

on longstanding prohibitions on the possession of firearms by felons.'"[41] The Court further observed that "at least five sitting Justices on the Supreme Court . . . are unwilling to strike down § 922(g)(1) as facially unconstitutional" and, therefore, the statute remains facially constitutional post-*Bruen*.[42] Nothing has changed that would warrant a different result here.

Second, turning to the question of whether § 922(g)(1) is unconstitutional as applied to Palfreyman, the Supreme Court in *Bruen* explained the proper legal test for courts to apply when determining whether a law violates the Second Amendment. That test involves primarily an historical analysis:

> when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[43]

In circumstances where a law seeks to address a societal problem with no historical analogue, the Supreme Court stated that "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank

---

[41] *United States v. Reichenbach*, No. 4:22-CR-00057, 2023 WL 5916467, at *5-6 (M.D. Pa. Sept. 11, 2023) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010)).

[42] *Id.*

[43] *Bruen*, 142 S. Ct. at 2126.

check."[44] In all circumstances, the Second Amendment "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."[45] Thus, when confronted with regulations "that were unimaginable at the founding," courts must reason "by analogy," which "requires a determination of whether the two regulations are relevantly similar" using "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense."[46]

Utilizing that test with regard to individuals who have been convicted of drug trafficking offenses, this Court in *United States v. Reichenbach* observed that "'[i]llegal drug trafficking is a largely modern crime' with no direct historical analogue," and therefore the Court considered "varied analogues in analyzing whether § 922(g)(1) may properly bar drug traffickers from possessing firearms."[47] After examining this Nation's historical record, the Court determined that early American laws, "although somewhat disparate in their targets and impact, all share a common concern and throughline. They were all targeted at groups that lawmakers deemed dangerous and disruptive to society, and were aimed at

---

[44] *Id.* at 2133.
[45] *Id.*
[46] *Id.* at 2132-33.
[47] *Reichenbach*, 2023 WL 5916467 at *6 (quoting *United States v. Alaniz*, 69 F.4th 1124, 1129 (9th Cir. 2023)).

protecting the public from violence and disorder."[48]

Applying those historical analogues to § 922(g)(1), as applied to individuals who have been convicted of felony drug trafficking offenses, this Court then examined "the question of 'how and why the regulations burden a law-abiding citizen's right to armed self-defense.'"[49] In assessing the "why" metric, the Court noted that early American laws "were targeted at groups that lawmakers deemed dangerous and disruptive, and the laws sought to protect the public from violence and disorder" and observed that, as applied to drug trafficking offenses, "lawmakers have made a reasoned decision that drug traffickers are dangerous and disruptive to society. Especially so given the well understood connection between drugs, firearms, and deadly violence, which the Supreme Court has described as a 'dangerous combination.'"[50] The why of early laws and modern laws therefore closely align.[51]

So too does the "how" metric: "modern society has, similar to the founding generation, decided that the only effective method of protecting the lives of its citizens is by preventing convicted drug traffickers from possessing firearms."[52] Given that both metrics closely align the Nation's early firearm regulations with § 922(g)(1) as applied to convicted drug traffickers, "the Court easily conclude[d]

---

[48]  *Id.* at *7.
[49]  *Id.* at *8 (quoting *Bruen*, 142 S. Ct. at 2132-33).
[50]  *Id.* (quoting *Muscarello v. United States*, 524 U.S. 125, 132 (1998)).
[51]  *Id.*
[52]  *Id.* at *8-9.

that those early American laws are sufficiently analogous to § 922(g)(1) as applied to drug traffickers," and § 922(g)(1) is constitutional as applied to felon drug traffickers.[53]

Because Palfreyman has similarly been convicted of a felony drug trafficking offense—the very same offense of which Reichenbach had been convicted[54]—the reasoning applied in *Reichenbach* also applies here. 18 U.S.C. § 922(g)(1) is neither facially unconstitutional nor unconstitutional as applied to Palfreyman. Accordingly, this claim must be denied.

### C.   Alleged PSR Errors

Turning to Palfreyman's claims related to his PSR, as explained below, these claims are without merit. Palfreyman alleges that the PSR was not timely delivered to him, and that the PSR (and consequently, the Court) improperly denied acceptance of responsibility based on Palfreyman's continuing criminal conduct and improperly calculated his criminal history points.[55]

As to the denial of acceptance of responsibility, it is well-established that "'continual criminal activity, even differing in nature from the convicted offense, is inconsistent with an acceptance of responsibility and an interest in

---

[53]   *Id.* at *9.
[54]   *See id.* at *1.
[55]   Doc. 87 at 1-2.

rehabilitation.'"[56] Here, the uncontested evidence at sentencing established that Palfreyman "used methamphetamine on three occasions" and "further violated the terms of pretrial supervision by violating curfew and having contact with Summer Benjamin."[57] Palfreyman therefore plainly continued engaging in criminal conduct.

Importantly, Palfreyman does not deny that he engaged in criminal conduct; rather, he appears to assert that the Court should have overlooked his criminal conduct because he "told on my self [sic]" and informed the United States Probation Office that he had used methamphetamine, although he acknowledges that he failed three drug tests within thirty days.[58] But Palfreyman's argument "fails to grapple with the possibility that demonstrating one's acceptance of responsibility for a particular offense might include refraining from additional criminal activity" even if he later admitted to that criminal conduct.[59] Because Palfreyman continued with criminal conduct even after his arrest, there was nothing improper in denying acceptance of responsibility, and this claim is meritless.

Palfreyman next argues, in perfunctory fashion, that the PSR erroneously assigned three criminal history points for his 2022 conviction for simple assault,

---

[56]  *United States v. Mercado*, 81 F.4th 352, 359 (3d Cir. 2023) (quoting *United States v. Ceccarani*, 98 F.3d 126, 130 (3d Cir. 1996) (brackets omitted)).

[57]  Doc. 64 at 7.

[58]  Doc. 108 at 4. *See id.* at 3-4.

[59]  *Mercado*, 81 F.4th at 357.

when he should only have been assigned one point.[60] This argument is incorrect. The PSR notes that in 2022 Palfreyman was convicted of simple assault and sentenced to imprisonment for a term of between 2 days and 24 months less one day.[61]

The Sentencing Guidelines are clear that three criminal history points are to be assigned to any "prior sentence of imprisonment exceeding one year and one month."[62] The Sentencing Guidelines further explain that "[t]he term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed."[63] Because Palfreyman was sentence to a maximum term of imprisonment that exceeded one year and one month, that offense properly garnered three criminal history points, regardless of the actual duration of Palfreyman's incarceration.[64]

Finally, with respect to the fact that Palfreyman did not receive the revised PSR until eight days prior to sentencing, there was nothing legally improper about this timeframe, as the Federal Rules of Criminal Procedure only require that the

---

[60]  Doc. 87 at 2.
[61]  Doc. 64 at 12.
[62]  USSG § 4A1.1(a).
[63]  *Id.* § 4A1.2(b)(1).
[64]  *See id.* § 4A1.2 cmt. n. 2 (stating that "criminal history points are based on the sentence pronounced, not the length of time actually served" and because "the length of the sentence of imprisonment is the stated maximum . . . in the case of an indeterminate sentence of one to five years, the stated maximum is five years" which therefore constitutes the length of the sentence of imprisonment for calculation of criminal history points).

PSR be submitted "[a]t least 7 days before sentencing."[65] The United States Probation Office complied with this requirement. Moreover, Palfreyman's attorney acknowledged that he had reviewed the PSR, and voiced no concerns over not having had sufficient time to review the PSR.[66] Finally, Palfreyman does not identify any prejudice that may have resulted from the timing of the submission of the PSR and, in the absence of any such prejudice, any "technical procedural violation" is "plainly noncognizable" in a § 2255 motion.[67] Accordingly, no issues related to the PSR would warrant relief under § 2255, and this claim will likewise be denied.

### D.    Calculation of Sentence

Next, Palfreyman contends that the BOP has improperly calculated his sentence by failing to give credit for time that Palfreyman spent in federal pretrial custody.[68] However, this Court lacks jurisdiction to consider any such challenge under 28 U.S.C. § 2255.

The Third Circuit has long recognized that "Section 2255 . . . is expressly limited to challenges to the validity of the petitioner's sentence," while "[f]ederal prisoners challenging some aspect of the *execution* of their sentence . . . may

---

[65]   Fed. R. Crim. P. 32(g).
[66]   Doc. 95 at 4.
[67]   *United States v. Folk*, 954 F.3d 597, 602 (3d Cir. 2020).
[68]   Doc. 87 at 2.

proceed under [28 U.S.C.] Section 2241."[69] Challenges to the calculation of sentencing credits is a challenge to the execution of a sentence and, accordingly, any claim brought by a prisoner that "challenges the BOP's calculation of sentence credits . . . is appropriately addressed in a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241."[70] Consequently, this claim is not properly brought in a 28 U.S.C. § 2255 motion, and the Court will not consider that claim here.

### E.   Ineffective Assistance of Counsel

Finally, Palfreyman argues that his attorney was ineffective for failing to raise many of these issues at sentencing.[71] As discussed below, however, Palfreyman did not receive ineffective assistance of counsel.

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[72] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[73] In determining whether an attorney's performance is

---

[69]   *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) (quoting *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001)).

[70]   *United States v. Vidal*, 647 F. App'x 59, 60 (3d Cir. 2016) (citing *United States v. Grimes,* 641 F.2d 96, 99 (3d Cir. 1981)). *See also United States v. Murphy*, 684 F. App'x 113, 115 (3d Cir. 2017) (noting that "that the appropriate vehicle for challenging the BOP's determination [regarding sentencing credits for time spent in federal pretrial custody] would be a petition filed pursuant to 28 U.S.C. § 2241" (citing *Blood v. Bledsoe*, 648 F.3d 203, 205-06 (3d Cir. 2011)).

[71]   Doc. 87 at 1-2.

[72]   *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).

[73]   *Id.* (quoting *Strickland*, 466 U.S. at 687).

deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[74] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[75]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[76] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[77] In other words, a movant must establish a "a substantial likelihood" that any errors "changed the outcome of . . . trial."[78]

As to any issues regarding the PSR, as explained above, Palfreyman presents no meritorious arguments that the PSR was in any way incorrect. It is beyond

---

[74] *Strickland*, 466 U.S. at 690.
[75] *Id.*
[76] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[77] *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).
[78] *Branch v. Sweeney*, 758 F.3d 226, 238 (3d Cir. 2014).

peradventure that an attorney cannot be "ineffective for failing to raise a meritless argument."[79] Because is no merit to Palfreyman's arguments, counsel did not perform deficiently in failing to raise them, and Palfreyman was not prejudiced by that failure.

Regarding Palfreyman's challenge to the BOP's sentence calculation, he argues that counsel was ineffective for not asserting at sentencing that time spent in pretrial detainment "was never applied to [Palfreyman's] sentence."[80] However, at the time of sentencing, no sentence had been imposed and the BOP therefore had not yet calculated Palfreyman's sentence. Counsel plainly could not have objected to any BOP calculation—or otherwise have raised the argument that Palfreyman suggests—since the alleged basis for the argument did not yet exist. Accordingly, counsel did not perform deficiently in failing to raise this claim at sentencing, and Palfreyman's allegations of ineffective assistance of counsel fail.

### F.    Certificate of Appealability

Because this Court will deny Palfreyman's § 2255 motion, this decision will not be appealable unless this Court or a circuit justice issues a certificate of appealability.[81] A certificate of appealability will not issue absent "a substantial

---

[79] *Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010). *See also United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument").

[80] Doc. 87 at 2.

[81] 28 U.S.C. § 2253(c)(1)(B).

showing of the denial of a constitutional right."[82] To satisfy this standard Palfreyman must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claims is debatable or wrong.[83] This Court finds that Palfreyman has not met this burden, and therefore declines to issue a certificate of appealability.

## III.   CONCLUSION

For the foregoing reasons, Palfreyman's 28 U.S.C. § 2255 motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[82]   *Id.* § 2253(c)(2).
[83]   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).